

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEPHANIE M. BALDWIN, )
)
     Plaintiff, )
) Case No. 10 C 5569
    v. )
) Magistrate Judge Arlander Keys
BOARD OF TRUSTEES OF THE )
UNIVERSITY OF ILLINOIS, et al., )
)
     Defendants. )

## MEMORANDUM OPINION AND ORDER

Stephanie Baldwin worked as a customer service representative for the University of Illinois from approximately June of 2004 through September 25, 2009, when she was constructively discharged. Second Amended Complaint, ¶¶2, 11. On July 13, 2010, she sued the University's Board of Trustees and Linda Montgomery, who, at all relevant times, served as the Interim Director of Patient Access of the University of Illinois at Chicago ("UIC"); she filed her suit in the Circuit Court of Cook County, and the defendants removed it to federal court. The case was initially assigned to Judge Aspen, but, after the parties consented to proceed before a United States Magistrate Judge, the case was reassigned to this Court. The case is currently before the Court on the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

In her Second Amended Complaint, filed August 12, 2011, Ms. Baldwin alleges that, after being diagnosed with kidney cancer in September 2006, she took a leave of absence under the Family

Medical Leave Act to have surgery; she left work in December 2006 and returned in April 2007 on a part-time basis. Second Amended Complaint, ¶¶5-7. She alleges that, shortly after returning, she went back on full-time disability because of the extreme pain she experienced after her surgery; she returned to work full time in July of 2007. *Id.*, ¶¶7-8. She alleges that, after returning in July, she requested a part-time schedule and an ergonomic chair to accommodate her back pain; she alleges that the defendants then engaged in a series of discriminatory, harassing and retaliatory acts, including requiring her to complete unnecessary medical examinations, denying her requests for time off to see her doctors, denying her request for an ergonomic chair, manipulating her time records to deny her pay, suspending her without cause, and failing to follow the University's disciplinary policies and practices. *Id.*, ¶¶8-10. She alleges that, as a result of these acts, she was deprived of unpaid wages, benefits and future compensation. *Id.*, ¶12. She asserts claims under the Family Medical Leave Act (Count 1) and the Americans with Disabilities Act (Count 2). The defendants have moved to dismiss both counts.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted; it should be granted only if it appears beyond all doubt that the plaintiff can prove no set of facts in support of her claim that would

2

entitle her to relief. *E.g., Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In ruling on a motion to dismiss under 12(b)(6), the Court accepts as true all well pleaded facts alleged in the complaint and it draws all reasonable inferences from those facts in favor of the non-moving party (in this case, Ms. Baldwin). *See, e.g., Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999). The Court does not ask whether Ms. Baldwin will ultimately prevail; rather, it asks whether she is entitled to offer evidence to support her claims against the defendants. *E.g., Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 327 (7th Cir. 1999).

The defendants have moved to dismiss both counts, but for different reasons: they argue that her ADA claim must be dismissed because it is untimely; and that her FMLA claim must be dismissed for failure to state a claim for which relief may be granted.

1. Ms. Baldwin's ADA Claim

The defendants have moved to dismiss Ms. Baldwin's ADA claim on the ground that it was filed too late. It was. Under the ADA a plaintiff must file suit within ninety days of receiving notice of her right to sue. *E.g., Lloyd v. Swifty Transportation, Inc.*, 552 F.3d 594, 600 (7th Cir. 2009)(citing 42 U.S.C. § 2000e-5(f)(1); *Houston v. Sidley & Austin*, 185 F.3d 837, 838-39 (7th Cir. 1999); *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 775 (7th Cir. 1995)). Although Ms. Baldwin has attempted to make an

3

issue of it, there is no question that she filed her complaint late under this standard. The record makes clear that Ms. Baldwin received her right-to-sue letter on April 13, 2010 and that she filed her complaint on July 13, 2010 – technically on the 92nd day after she received the letter. Thus, she is beyond the deadline – just barely beyond, but beyond nonetheless.

In her First Amended Complaint, she represented that she received the right-to-sue letter on April 13, 2010. *See* First Amended Complaint, ¶8(b). In her Second Amended Complaint, she alleges that "[i]n approximately April, 2010, the Plaintiff received her right to sue letter from the EEOC" and that she "timely filed suit within the requisite ninety (90) days of receipt of the right to sue letter." Second Amended Complaint, ¶28. But this attempt to skirt the issue is unavailing. Despite the allegation, she did not file the lawsuit in a timely fashion, and drafting a less specific allegation does nothing to change that fact. The defendants' motion to dismiss Ms. Baldwin's ADA claim is granted.

2. <u>Ms. Baldwin's FMLA Claim</u>

The defendants also move to dismiss Ms. Baldwin's FMLA claim. The FMLA prohibits employers from discharging or otherwise discriminating against any individual for opposing any practice made unlawful by the FMLA. 29 U.S.C. §2615(a)(2); 29 C.F.R. § 825.220(a)(2). To state a claim for FMLA retaliation, the plaintiff must allege (1) that she engaged in a statutorily

4

protected activity; (2) that she suffered an adverse action; and (3) that there was a causal link between the protected activity and the adverse action. *Mattern v. Panduit Corp.*, No. 11 C 984, 2011 WL 4889091, at *8 (N.D. Ill. Oct. 11, 2011)(citing *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 670 (7th Cir. 2011)). Ms. Baldwin has alleged that she took FMLA leave, and that, when she returned she was subject to harassment that made her working conditions so intolerable she had no choice but to leave – that she was constructively discharged. See Second Amended Complaint, ¶¶21-22. She does not allege, however, that the defendants engaged in this harassment *because* she exercised her right to take FMLA leave. Indeed, she doesn't link her mistreatment in any way to her taking leave; rather, she simply alleges that the defendants' actions "were willful and not in good faith." *Id.*, ¶22. That is not the test for an FMLA retaliation claim. Accordingly, the Court will grant the defendants' motion to dismiss this claim as well.

The defendants argue that, even if Ms. Baldwin had alleged a causal connection between the defendants' actions and her FMLA leave, her allegations do not rise to the level required to state a claim for constructive discharge. To be sure, "not everything that makes an employee unhappy is an actionable adverse action." *Oest v. Illinois Dept. of Corrections,* 240 F.3d 605, 613 (7th Cir. 2001)(quoting *Smart v. Ball State University,* 89 F.3d 437, 440-41 (7th Cir. 1996)). Rather, "[o]nly those acts resulting in

5

adverse employment action are cognizable under [the FMLA]." *Oest*, 240 F.3d at 612; *see also, Knox v. State of Indiana*, 93 F.3d 1327, 1334 (7th Cir. 1996); *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 485-86 (7th Cir.1996). Although the Seventh Circuit has defined adverse employment actions quite broadly, "adverse actions must be materially adverse to be actionable, 'meaning more than a mere inconvenience or an alteration of job responsibilities.'" *Oest*, 240 F.3d at 612 (quoting *Crady v. Liberty National Bank and Trust Co. of Illinois*, 993 F.2d 132, 136 (7th Cir. 1993)). Here, Ms. Baldwin has alleged that she was constructively discharged, which, if proved, certainly can amount to an adverse employment action.

"To establish a constructive discharge, the employee has to show that the employer made the working conditions so intolerable as to force a reasonable person to leave." *Parker v. Zimmer, Inc.*, No. 3-06-CV-767 PPS, 2008 WL 2945953, at *8 (N.D. Ind. July 24, 2008)(citing *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 440 (7th Cir. 2000)). She must show that her working conditions were made so intolerable that a reasonable person in her position would be forced to resign, rather than stay on the job while seeking redress. *Leonard v. Uhlich Children's Advantage Network*, 481 F.Supp.2d 931, 940 (N.D. Ill. 2007)(citing *Sears*, 233 F.3d at 440). This is an objective inquiry that "requires a higher showing than hostile work environment under Title VII." *Id.* In

other words, to win on her claim, she will have to make a very strong showing indeed that the defendants' actions were extraordinarily egregious, not simply annoying; beyond what might be seen in the run-of-the-mill discrimination allegations.

Ms. Baldwin alleges that the defendants required her to complete unnecessary medical examinations, that they denied her requests for time off to see her doctors, denied her request for an ergonomic chair, manipulated her time records to deny her pay, suspended her without cause, and failed to follow their own disciplinary policies and practices. Second Amended Complaint, ¶¶8-10. Although the Court agrees that these allegations would seem to fall short of the level of egregiousness required to justify an employee's decision to walk off the job, rather than stay and seek redress, the Court cannot say for certain that there are no circumstances under which Ms. Baldwin could persuade a jury that she was constructively discharged. For example, if Ms. Baldwin were required to endure extreme pain or forego lifesaving treatment because of the defendants' refusal to allow her to see her doctor, a jury might reasonably find that, under those circumstances, a reasonable person would have resigned. Of course there is no evidence to support such an allegation and this is really an exercise in speculation at this point. But the standard on a Rule 12(b)(6) motion to dismiss is exacting, and at this point, although it seems unlikely that Ms. Baldwin will be able to meet the high standards spelled out above, the Court is

7

not persuaded that the door should be slammed shut entirely right now. Accordingly, although the Court will grant the motion to dismiss the FMLA claim, the dismissal is without prejudice. Ms. Baldwin is given leave to amend her complaint, to the extent she is able to do so, to allege a causal connection between the defendants' actions and her taking FMLA leave, and to allege conduct that would satisfy the appropriate legal standards concerning constructive discharge.

## CONCLUSION

For the reasons set forth above, the Court finds that Ms. Baldwin's ADA claim is untimely and must be dismissed. Additionally, the Court finds that Ms. Baldwin's Second Amended Complaint fails to state a claim for violation of the FMLA. That claim is dismissed without prejudice, and Ms. Baldwin is given leave to amend her claim on or before September 5, 2012, to the extent she is able to do so consistent with the standards spelled out above.

Date: August 8, 2012

ENTERED:

MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT